UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY W. BYER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No. 1:15-CV-269

HON. ROBERT HOLMES BELL

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Jeffrey Byer seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679,

681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 52 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.35, 60.) He completed high school and was previously employed as a corrugator operator. (PageID.61, 84–85.) Plaintiff filed for benefits on September 6, 2012, alleging that he had been disabled since November 10, 2009, due to: a right hand amputation; pain, numbness, and burning in his right arm; carpal tunnel syndrome in his left hand; weakness and pain in his left hand; low back pain; depression; and anxiety. (PageID.97, 102–03.) Plaintiff's application was denied on February 1, 2013, after which time he requested a hearing before an ALJ. (PageID.113–23.) On August 26, 2013, Plaintiff appeared with his counsel before ALJ Luke Brennan for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.56–94.) In a written decision dated October 18, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.35–54.) On January 28, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.27–31.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled"

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Brennan determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

---

(20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

November 10, 2009, his alleged onset date. (PageID.40.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) carpal tunnel syndrome (CTS) of the left hand; (2) degenerative disc disease/mild lumbar spondylosis; and (3) amputation of the right hand. (PageID.40.) The ALJ also determined Plaintiff's depression, anxiety, and a left hip impairment did not amount to severe impairments. (PageID.40.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.41.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk 6 hours in an 8-hour workday with normal breaks; can sit 6 hours of an 8-hour workday with normal breaks; he has no functional use of the right upper extremity; he can frequently climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can frequently balance, stoop, kneel, crouch and crawl; he must avoid concentrated exposure to vibration, and he is limited to occasional handling and fingering with the left upper extremity.

(PageID.41.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.47–48.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 5,700 jobs within the lower peninsula of Michigan and 70,000 jobs within the nation, in the positions of greeter, parking booth cashier, and production inspector that an individual similar to Plaintiff could perform.

(PageID.48–49, 83, 85–86.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from November 10, 2009, through October 18, 2013. (PageID.49.)

## DISCUSSION

### 1. Medical Opinions

On July 29, 2013, Ms. Barbara Rounds, a licensed occupational therapist, examined Plaintiff for what appears to be the first and only time. (PageID.462–70.) After providing a discussion of Plaintiff's medical history, Ms. Rounds performed a physical evaluation that tested Plaintiff's sustained postures, mobility, and strength. (PageID.465–66.) Ms. Rounds next filled out a three page worksheet that reflected her opinion of Plaintiff's RFC. (PageID.467–69.) Among other things, Ms. Rounds opined that Plaintiff could only sit for a total of six hours in a workday, stand for less than two hours, and walk for less than two hours. (PageID.467.) Plaintiff would need a job that required him to be able to change positions at will, and take unscheduled breaks. (PageID.467.) He could only rarely lift and carry five, ten, and twenty pound weights, and could rarely stoop, bend, crouch, and squat, as well as climb stairs and ramps. (PageID.468–69). He could only grasp, hold, turn, and perform fine manipulation less than a third of the day. Plaintiff could further be expected to be absent and/or tardy from work about three days a month. (PageID.469.) Ms. Rounds

concluded that Plaintiff "does not appear capable of engaging in substantial gainful activity on a regular and/or consistent basis." (PageID.469.)

On August 20, 2013, Plaintiff's physician, Dr. Benjamin Bruinsma, M.D., wrote a letter to Plaintiff's attorney. He stated that he had been treating Plaintiff for his right upper extremity amputation that had led to neuropathic and phantom pain. (PageID.471.) Dr. Bruinsma also noted that he had recently begun treating Plaintiff for low back pain. The pain was chronic, having lasted for the past fifteen to twenty years. (PageID.471.) Dr. Bruinsma further noted that an X-Ray on Plaintiff's hip and back demonstrated degenerative changes, and that Plaintiff had been referred to therapy, but had no improvement after several sessions. (PageID.471.) Dr. Bruinsma provided several diagnoses, and concluded by noting that Ms. Rounds had evaluated Plaintiff and provided an RFC assessment. With regard to Ms. Rounds' RFC evaluation, Dr. Bruinsma stated, "I was able to review this. [Plaintiff] was fully cooperative. He gave full participation. Maximal effort was noted. The residual functional capacity evaluation was considered valid. I would adopt the restrictions per the FCE, as Mr. Byers' restrictions." (PageID.472.) Plaintiff raises several arguments which, at bottom, argue that the ALJ erred in failing to adopt the RFC of Ms. Rounds. The Court only partially agrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (*citing Shavers*, 839 F.2d at 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply

stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

*A.     Ms. Rounds*

The Court first concludes that the ALJ did not err in his treatment of Ms. Rounds. As an occupational therapist, Ms. Rounds is not an acceptable source. *See* 20 C.F.R. 416.913(a), (d)(1); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014); *Jones v. Colvin*, No. 7–14–cv–36, 2014 WL 4716517, at * 4 (E.D. Ky. Sept. 22, 2014). Because Ms. Rounds was not an acceptable medical source, the ALJ was not required to provide "good reasons" for the weight given to her opinion under the treating physician doctrine. 20 C.F.R. § 416.927(c)(2); *see also, e.g.*, *Hughes v. Comm'r of Soc. Sec.*, No. 1:11–cv–66, 2015 WL 4076931, at *8 (W.D. Mich. July 6, 2015); *Gordon v. Colvin*, No. 2:14–cv–213, 2015 WL 350617, at *6 (S.D. Ohio Jan. 26, 2015) (collecting cases); *Borden v. Comm'r of Soc. Sec.*, 1:13–cv–2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec.19, 2014) ("Other source opinions are "neither entitled to controlling weight, nor subject to the 'good reasons' requirement of the treating physician rule.").

Under SSR 06–3p, opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06–3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). The ALJ evaluated and then

9

properly discounted Ms. Rounds' opinions consistent with SSR 06–3p. The Court finds no error.

### B. Dr. Bruinsma

The ALJ gave only "partial weight" to the opinion of Dr. Bruinsma. The ALJ noted that "his opinion merely adopts the findings of Ms. Rounds, a non-acceptable medical source without analysis or rationale. Because his opinion merely adopts another's opinion and he offers no rationale for doing so, he consequently provides no support upon which to assess the consistency of his opinion." (PageID.47.) The parties do not dispute that Dr. Bruinsma qualifies as a treating physician, and consequently the ALJ was required to provide good reasons for giving less than controlling weight to the opinion Dr. Bruinsma indicated he adopted. The Court concludes, however, that the ALJ has failed to provide a good reason to discount this opinion.

This is so because the ALJ was incorrect in stating that Dr. Bruinsma had provided no justification for his opinion. Indeed, the doctor noted that he had been treating Plaintiff for his right hand amputation and back pain. Notably, Dr. Bruinsma identified an X-Ray of Plaintiff's hip and back which showed degenerative changes. (PageID.471.) The doctor noted that while Plaintiff had been to therapy, there had been no progress. (PageID.471.) While the Court might prefer a more detailed explanation for the extreme restrictions contained in the opinion, they are enough to show the ALJ was incorrect in stating that the doctor did not provide any rationale for his opinion. The ALJ's reason for discounting the

opinion is therefore unsupported by substantial evidence.

The Commissioner responds by presenting an argument that, while arguably persuasive, should have been conducted by the ALJ, and accordingly does not save the ALJ's error. The Commissioner further argues that harmless error should apply. (PageID.640.) While the ALJ's failure to give good reasons for not crediting a treating physician's opinion generally "does not constitute harmless error," there are situations in which the ALJ's violation of the procedural requirement of § 404.1527(c)(2) may be harmless error. As the Sixth Circuit explained:

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) [now § 1527(c)(2) ] could never constitute harmless error. We do not decide the question of whether a de minimis violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) [now § 1527(c)(2) ] may not warrant reversal. *Cf. NLRB v. Wyman–Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2) [now § 1527(c)(2) ]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation . . .

*Wilson*, 378 F.3d at 547. The Court concludes that this is not one of those situations where harmless error applies. The good reason requirement exists to identify the specific

discrepancies and to explain to a claimant "why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Social Security*, 375 F. App'x. 543, 552 (6th Cir. 2010). The ALJ's decision does not do so here. Accordingly, the ALJ's decision will be reversed, and this matter remanded for further consideration of Dr. Bruinsma's opinion.

### 2. Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that he could not work due to the phantom pain in his right arm, the carpal tunnel syndrome in his left hand, low back pain, and depression. (PageID.68–70, 74–75.) He testified that the pain caused him to be unable to stand or walk for long periods of time, and that he could not even sit down for long. (PageID.80.) Plaintiff claims the ALJ erred in assessing his credibility. The Court disagrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following

standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

The Sixth Circuit has repeatedly held that "[s]ubjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (*citing Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (*citing Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (*citing Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ

13

found Plaintiff's subjective allegations not fully credible, and that finding should not be disregarded lightly. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, the Sixth Circuit has recently described an ALJ's credibility findings as "virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

Plaintiff begins by arguing that the above authority is inconsistent with the regulations that, he argues, direct a much more stringent standard. According to Plaintiff, an ALJ must accept a Plaintiff's subjective allegations unless they are entirely inconsistent with all the other evidence. (PageID.519–520.) The Commissioner directs the Court to another decision from this district in which Plaintiff's counsel advanced a similar argument. There, the Court found that the argument advanced by Plaintiff's counsel was a "too narrow" reading of the regulation. (PageID.641) (*citing Jacob v. Comm'r of Soc. Sec.*, No. 1:12-cv-850, 2013 WL 4809331, at *5 (W.D. Mich. Sept. 9, 2013) (Maloney, J.). The Court agrees with the well-reasoned analysis from that decision and finds it consistent with a proper interpretation of the regulations. The relevant inquiry is whether the ALJ's credibility analysis is "reasonable and supported by substantial evidence." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 249 (6th Cir. 2007).

Here, substantial evidence supports the ALJ's credibility analysis. In an analysis spanning over one-and-one-half pages, the ALJ found that Plaintiff's testimony was not entirely credible. The ALJ noted an EMG of Plaintiff's left hand found Plaintiff's carpal

tunnel syndrome was only mild to moderate in severity. (PageID.404.) A May 6, 2013, X-Ray of Plaintiff's right hip returned normal results. (PageID.452.) Plaintiff had a mildly bent forward gait and a moderate lumbar extension, but had 5/5 motor strength bilaterally. (PageID.493.) The ALJ also found Plaintiff's testimony inconsistent with his activities of daily living, which included driving with no difficulty, and participating in grocery shopping. (PageID.46, 60, 77.)

Plaintiff argues that substantial evidence does not support the ALJ's conclusion because in evaluating the record, the ALJ "played doctor" with the medical evidence, and that the Plaintiff's activities of daily living are not probative of his ability to perform full time work. (PageID.552–24.) The Court disagrees. While it is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians, that is not what the ALJ did here. *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006). Rather it appears to the Court that, based on the lack of objective findings, the ALJ inferred that Plaintiff's allegations were not as severe as alleged. The record reflects that the ALJ articulated contradictions among the medical records, Plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. "As the ALJ properly reviewed and weighed the reports to make a legal determination that is supported by substantial evidence, the assertion that the ALJ was 'playing doctor' is unsupported." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014). The ALJ also did not err in considering Plaintiff's activities of daily living. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha*

*v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) ("Although the ability to do household chores is not direct evidence of an ability to do gainful work, an ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.") (citations and quotations omitted). Accordingly, Plaintiff's claim of error will be denied.

### 3. Severe Impairment

Plaintiff contends that the ALJ erred at step two of the sequential evaluation by failing to identify his hip condition as a severe impairment. (PageID.527.) A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id*. An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ found that Plaintiff had severe impairments of carpal tunnel syndrome, degenerative disc disease and mild lumbar spondylosis, and amputation of the right hand.

(PageID.40.)  The ALJ's failure to include other severe impairments at step two is legally irrelevant.  *Anthony*, 266 F. App'x. at 457.  Accordingly, Plaintiff's claim of error is denied.

### 4. Remand is Appropriate.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013).  This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *Brooks*, 531 F. App'x at 644.  This case is being reversed because the ALJ failed to provide "good reasons" for discounting the opinion of a treating physician, and not because there is compelling evidence that Plaintiff is disabled.  Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is reevaluate Dr. Bruinsma's opinion under the treating physician doctrine.

A separate judgment shall issue.

Dated: May 27, 2016                                          /s/ Robert Holmes Bell
                                                             ROBERT HOLMES BELL
                                                             UNITED STATES DISTRICT JUDGE